Good morning, your honor. My name is Chris Redburn. I'm here this morning representing Tracy Batts. And I'd like to reserve four minutes for rebuttal, if I might. Are you going to split your time up? Yes, you are. As I understand it, ten for each petition. No, no. Twenty for each side, ten for each petitioner. There's two petitioners in the case. Right. Your honors, if there was ever a case that warranted the application of the rule in Oregon v. Kennedy, this is the case. In Kennedy itself, as the court is well aware, the United States Supreme Court held that where a prosecutor provokes a mistrial in a criminal case, the defendant may not be retried under the double jeopardy clause. Well, that's if the prosecutor's intent was to provoke the mistrial. Isn't that right? And that's the issue in this case. Exactly. It ended up in the trial judge saying, well, we're going to have another trial. We're going to call the mistrial here. Yes. But the question is whether, under the circumstances, that's what the prosecutor is intended by asking, pursuing this line of question, asking the question that they were precluded from asking. Exactly, Your Honor. Whether the prosecutor intended to provoke a mistrial. And we've got some determinations on that by the California Supreme Court. The appellate court apparently said he did. The Supreme Court said, no, he didn't. Our district court has looked at it and said, no, they didn't. Yes, Your Honor. Are those findings a fact or the conclusions of law as to what the intent of the prosecutor was? Well, the intent, I think, is more of a legal conclusion. The intent is a legal conclusion? Well. That's a factual conclusion. It's a factual question. But the question under Oregon v. Kennedy is whether or not there was intent. So in that sense, it's a mixed law and fact. We were taught that the intent of a man was as much a question of fact as the state of his digestion. I think that's true, Your Honor. So the issue then becomes whether or not the ruling of the California Supreme Court, which is the ruling that this court would review for reasonableness under the ADPA, was a reasonable application of Oregon v. Kennedy. And it's based on a factual finding by the trial judge who was present that there was no intent to provoke a mistrial. Yes, Your Honor. That has to become clearly erroneous before we get off first base. Yes, and I think it is clearly erroneous, Your Honor, if you look at the record of this case and exactly what these prosecutors did in order to end their trial. The circumstantial evidence of intent is very, very strong. These prosecutors didn't just slip and blurt out something that caused the end of the trial. They carefully, carefully planned a scheme to end the trial. After the defense had conducted a withering cross-examination of one of their most important witnesses, the investigating officer. By implying that the reason he wasn't there was that he had been bought off when the fact of the matter was that he was quite dead. Your Honor, if there were an incorrect or misleading implication in the cross-examination, it could easily have been cured without ending the trial. When these prosecutors went into their meeting with a third prosecutor. But they didn't intend to. The prosecution argued vociferously that no mistrial should be granted, that a corrective instruction would be sufficient. It is true. And so what they wanted to do was to set the record straight. They wanted to clear up the misleading implication that Brankazon or Brankzeon was simply being paid $1,500 to stay away from the trial. Right? Yes, Your Honor, and they were allowed to do that. They could easily have done that. What they should have done when they went into their meeting with their witness is told them that the court had ordered and California law required that when he was asked whether or not Jones, Benson Jones, was at that third preliminary examination, he should have said no, he wasn't there. He was unavailable. That is what the court had ordered. The standard of review which we have to apply, the one under 2254E1, that is that the evidence was clear in convincing the trial judge was not correct in making his finding of intent? Well, I'm not entirely clear. We're doing an analysis here of the intrinsic evidence, since no new evidence was brought in in the district court. So I think the standard is that there's a presumption of correctness to the factual findings in the trial court. But in this case, if there's ever a case in which that presumption is rebutted, it is this case, given the extraordinary facts that we find in the record of this meeting that they had when they thought their case was going poorly. Where did you get that when they thought their case was going poorly? Where does that come from? That's the extraordinary thing about this record, Your Honor, and that is that the prosecutors... That's your interpretation of the record, isn't it? I mean, nobody testified that the case was going bad. The court held that the case was going well. Yeah. They held that a reasonable prosecutor would believe the case was going well. But these prosecutors said on the record, if the jury believes what this cross-examination, the implication that the witness was bribed, if they believe that, our credibility has been impugned, the credibility of our major witness has been devastated, our star witness has been devastated, and the credibility of our investigating officer has been devastated. Those are the terms they used in the heat of the moment right after they had committed their misconduct. Did they ask for a mistrial? The prosecution? No, after they committed the misconduct, they didn't probably, you know, they hoped that... They fought it, right? They fought the mistrial, but... You have four minutes now. Do you want to save those four minutes? I would, unless the Court has other questions. Okay. If I hurt you. Thank you. You have four minutes left. Do you wish to save any time, counsel? Two minutes, Your Honor. Two minutes, Your Honor. Gerald Brannan on behalf of Terrence McRae, Petitioner Terrence McRae. In this case, I think the California Supreme Court failed to take into account and reconcile key parts of the record, parts that were highly probative and extremely relevant and struck right to the heart of Petitioner's claim. That's the reason that the California Supreme Court's ruling was unreasonable, because its fact-finding process was unreasonable. It wholeheartedly deferred to the state court decision, which was unreasonable for the same reason. Its fact-finding process was also unreasonable. And I would just like to just mention from the beginning how this happened. The trial court made certain statements that reflect why its fact-finding process was unreasonable. It said, in determining whether the DA intended to cause a mistrial, the trial court stated, quote, that he would look to the circumstances at the time of the mistrial, and from that, try to reason and judge whether the district attorney would, in fact, want a mistrial. The trial court also said, and I quote, in his, quote, honest evaluation, it was his honest evaluation that a district attorney sitting in the circumstances that they were sitting in at the time would want to proceed and have a decision. The trial court's ruling was based not on what these prosecutors actually did. The record of which is voluminous, their acts as well as their statements, but on what a reasonable prosecutor under these circumstances might have done. That's a defect in the fact-finding process, because he didn't really look to the extrinsic evidence or the intrinsic evidence of their intent. He was setting up a hypothetical. The Supreme Court did the same thing in deferring to the state court. It just listed a lot of evidence, but it didn't factor it in. The court has to factor it in, otherwise — Well, what they were talking about was we'll look to the circumstantial evidence based on what a reasonable attorney would do under the circumstances, and from that, deduce what the actual intent of the attorneys was. What's wrong with that? Well, it's an imaginary hypothetical. It's saying, well, a reasonable attorney did this, but what did these attorneys do? They may not have been reasonable. They may have been driven by emotion, and they still may have intended, and I think they did intend, to provoke a mistrial. And you have to look. You can't hypothecate what a generalized, imaginary, reasonable — You don't mean hypothecate. That's a mortgage. You mean hypothesize. Yes, hypothesize. What a reasonable person would do, you have to look at the intent of the prosecutors. That's what Oregon v. Kennedy says. The trial court on the ground said, I honestly do not believe that their conduct occurred because they wanted a mistrial. This is a lengthy hearing. The trial judge on the ground looked at this, heard the lawyers, evaluated the case, was in the best possible position to do this, understood the rule of Oregon v. Kennedy, and concluded that they did not want a mistrial. I think their conduct occurred because they let their emotions run far beyond where they should have ran. I think they realized that. So this is a factual finding that I don't see in any way how that can be clearly erroneous. We're told over and over again the trial judges are in the best position to decide Batson questions, Wheeler questions, and questions like this. And here you have an experienced judge who sat through all this, looking at it, concluding after lengthy thought and evaluation, I don't find an intent. Why is that clearly erroneous? Well, Your Honor, I would also refer the Court to what additionally the trial court judge said. He said, quote, something to the effect of, I have no idea how this could have happened under any reasonable circumstances. I read all of that stuff. But the final conclusion is there was no intent to provoke a mistrial. But in arriving at that conclusion, he didn't look at the evidence pointing to the intent of these prosecutors. He looked at what his opinion was as to what a reasonable prosecutor would have done. He did. Based on the evidence. He said he looked at everything that happened. But his comments reflect that he looked at really what a reasonable prosecutor, he thought what a reasonable prosecutor would have done based on the strength of the case. These prosecutors said they were devastated by this comment. Devastated the credibility of not only the testifying detective, devastated the testimony of Jones, impugned their integrity. I mean, this is a bold statement, a spontaneous statement as well, which is very relevant. They told the witness to wait before he answered for the purpose of permitting an objection. Is that right? They instructed, yeah. If the objection did not come, then the witness answered. The reason I ask that is because I saw a case where the prosecutor told the witness if there's an objection, yell out the answer over top of the objection so we can make sure the jury hears it. And there was an intent to provoke a mistrial in that case. But that's a lot different than telling the witness don't answer until you see whether there's going to be an objection. Well, that's perhaps a more crass way of accomplishing the same thing. I think these guys were a little more subtle in their approach. That's what you think, but we've got a trial judge that says that's not the case. Prosecutor Sterling said, he testified, well, I didn't tell him to say he was murdered or dead. Prosecutor Sterling didn't testify, oh, I instructed my witness according to the law and according to the trial court's directives to say he was unavailable. Well, all that's true, but the question is what was the intent? And I'm not going to beat this dead horse, but you've got a hard row to hoe when you've got a finding by a trial judge on the ground during all of this time that there was no intent. Well, I think moving on to the California Supreme Court decision from there, I would say that the California Supreme Court decision, given this record, was unreasonable because they abdicated their duty of judicial review. Rather than factoring in, this case falls squarely within Williams v. Taylor, Miller L., and Taylor v. Maddox. I mean, this case, if there's any one case I would direct the court to in terms of analyzing this case, it's Taylor v. Maddox. That's a decision of this court, which is highly relevant to understanding what happened here. Now, the California Supreme Court mentioned two things in its analysis, a half a page and a 30-page decision, which it apparently predicated its ruling on, which was the pause. Now, the pause, I think, doesn't amount to a whole lot. You know, they instructed him to pause. What they should have instructed him to do is don't say murdered, don't say dead. Pardon me. We're guided by a California statute and the court's directives. I mean, you couldn't have gotten that wrong. You're right. That's what they should have done. Yeah. The question is what was their intent. But the California Supreme Court didn't factor in all this evidence, this huge weight of evidence of acts and statements that circumstantial evidence showing their intent. They didn't discuss it. Just discussed the strength of the case, talked about what a reasonable prosecutor would have done under those circumstances. That's an abdication, I think, of judicial review in this case. And that's, I believe, why the California Supreme Court decision was unreasonable. Thank you very much. You've got two minutes left and you've got four minutes left. We'll take a look at Taylor v. Maddox and we'll see what the other side says about Taylor v. Maddox. Good morning. May it please the Court. David Wildman, California Deputy Attorney General for Respondent. As members of this panel have recognized, this case is all about the application of the ADPA's highly deferential standard. In this case, you have a trial court that said the case was overall going well for the prosecution. Prosecutors in this position would not want to end the trial. And that's a – the California Supreme Court recognized that and affirmed that. And that factual finding has not been overcome. It's addressed the presumption of correctness. It's reasonable. And it simply hasn't been overcome. And there's a lot of evidence in the record that supports it. Mr. Wildman, during this 20 minutes while the Court was in recess and the prosecutors were talking to the witness and between themselves, was there any evidence of one of them saying, well, yeah, we've got to ask it, but if we do, the Court may declare a mistrial? Was there any evidence about that? Did the mistrial ever come up between them during that time? Is there any evidence of that? Not in the record, Your Honor. The only thing I can say, Your Honor, basically what the prosecutors and the detective have said about that discussion is that the mistrial is the first thing for their mind. And they really thought – and obviously, in retrospect, they – in hindsight, they thought wrongly that the trial court would let them get this evidence in because the cross-examination of the detective in their opinion had changed the whole tenor of the trial. I hear you saying that, but it seems to me if you've got to – if we're talking about the reasonable prosecutors and you've got a couple of them talking about this, well, should we ask them? What are we going to do now? What do we do after this? Well, you've got to ask them. You've got to – okay, I've got to ask them. You would think that somebody would say, well, you know, the judge told us not to do that. Well, we'll wait. And there will be an objection. Then we'll go up and we'll talk about it. And the evidence is not going to get in until the Court has made some kind of a ruling. Maybe that's what they're talking about. But it seems to me they said, well, what if there's not an objection? And he answers, don't you think there might be a possibility of a mistrial? Should we do this? But you say there's no evidence at all that they ever talked about the possibility that this would end in a mistrial? This would prompt a mistrial? No, the record doesn't show that they talked about that. It also shows that the 20 minutes was not a time when they sat down in a conference room and calculated this out. It was not a what? They didn't sit down in a conference room and work this out as a plan and blah, blah, blah. What they did is they were, according to what they said, is they were running up and down the stairs, checking their desk and talking to each other in this 20 minutes. And so they really didn't apparently have time to think this through and make a smart decision about how to approach this. In what form did their explanation of their behavior come before the trial court? Just argument? Unsworn argument? Did the defense attorney call them to the stand and ask them questions about what they were doing under oath? Your Honor, the defense attorney did not call them to the stand and ask them questions. However, one of the prosecutors, I believe Droger, said he was giving his argument as if statements as if they were made under oath. But they weren't. They weren't. I mean, was the trial court relying on material as testimonial material that the trial court shouldn't have been relying on? In other words, is there a defect in the fact-finding process? I don't believe so, Your Honor. This is evidence such as you have in a Wheeler or a Babson situation where the trial judge asks the prosecutor what his reasons are and they get put on the record. And the presumption is that an attorney before the court is not trying to mislead the court because that would be a violation of business and professions code. There's certainly a presumption that the prosecutor is giving factual, true facts before the court and not trying to mislead the court. But in that analogy, Wheeler and Babson, they don't put the prosecutor under oath, or at least they haven't yet. So you're saying we should look at it in the same way in terms of information relied on by the court? I believe so. I can't remember which case. There is some case that talked about that. I don't remember which one. I'm sorry. I don't remember. What about Taylor v. Maddox? The other side tells us that that case requires a different view of this situation. Taylor v. Maddox, in writing that opinion, Judge Kaczynski talks about that not every jot and every tittle has to be in the opinion. And certainly in that case, they were talking about something that was very central. There were two witnesses who were diametrically opposed to each other about their account of what happened. And the third witness, which wasn't talked about in the opinion, which was central and made the difference. But when you're talking not about a witness who's left out, about testimony that's left out, when you're talking about appellant's arguments, which is really what we're talking about, you can have dozens and dozens and dozens of appellant's arguments, and certainly most appellate courts, including this Court, are not going to put a response to every single argument in their opinion. The fact that those arguments are made in the briefs should suffice to say that the Court has reviewed them, especially if, you know, you're not leaving out a central witness. So this case really isn't Taylor v. Maddox. Thank you. And a couple of other things that are objective evidence as to show why the case was extremely strong with the prosecution. One, you had two trials, the first trial and the third trial, which did go to a jury. Both those trials ended in convictions, which is some evidence how strong this trial, this case was. You also had. No, it wasn't. You also had a number of witnesses that were reluctant to come forward. You had the witness, Benzion, who was given witness protection. You also had, it's in the record, that Sonic Stewart was given, by the time of the third trial, witness protection. So you had a lot of witnesses who were running scared in this trial. You also had witnesses such as Benjamin Jones, who were reluctant to come forward, who were serving state prison sentence, didn't want to be known as snitches, and in fact had been in the same cell at least as appellant Bax. So you had a case where most prosecutors would not want to retry this case, not with witnesses who were running scared, witnesses who have to be relocated. It certainly was, of all the cases I've seen, one of the cases you really just would not want to retry. Also, there's a lot of evidence in the record that Petitioners wanted to have another trial. There was evidence that deputies overheard Petitioners discussing trying to have a diversion to create a mistrial. They were trying to do something to shut up McCrae's wife to make sure that she doesn't testify in the next trial. There was also, this was the fifth motion for mistrial that the defendant's attorneys had made during this trial. Now, I can see of the Court that the first four of those attempts are not in the excerpts before this Court, but they are in the record that was before the district court and that was before the California Supreme Court. So they, defense attorneys, five times they wanted a mistrial, definitely wanted a mistrial. Prosecutors never asked for a mistrial. So that's some evidence, again, that they didn't intend to have a mistrial. Also, I think one of the strongest things is usually if it's very clear to a prosecutor that the case is going to go to a mistrial, there's nothing you can argue. You say submit, the Court makes its decision. You don't argue on and on for a dozen pages in every possible way about why there shouldn't be a mistrial. And so, again, that's more evidence that these prosecutors didn't intend to have a mistrial. I think they made a mistake here, but they certainly never intended to end this trial and have it go to a third trial. And so all of those pieces of evidence really show that these prosecutors didn't intend to have a mistrial. You've been with this case for a long time, I see.  Unless there are further questions. No further questions. I would submit. Gentlemen, on the defense, you have four minutes, Mr. Redburn, and you have two minutes, Mr. Brannon. Your Honor, if I could, I'd like to address the question of the pause. This pause is evidence of the detail to which these prosecutors went to plan their misconduct and to end this trial. They told their witness that he should pause after an unobjectionable question. The trial court said, I was stunned when he answered that question the way he did. There was never any doubt in the trial court that the question, why wasn't he there, was not objectionable because the court had ordered an answer. He was unavailable. So the pause was put there not to bring the matter to the trial judge. It was put there to give them an argument later on. This was a sophisticated scheme they hatched. To give them an argument later on, which would be adopted by the California Supreme Court and by the reviewing courts, that there was a chance to make an objection. There was no chance to make an objection. The question was not objectionable as it was asked. So the pause is evidence of an intent to end the trial. Well, hadn't this witness previously testified that this fellow was unavailable? Brancione or however you pronounce it? I'm not sure about that. He may have. He may have said he was unavailable. So when you get the question, why, what was the question again? Why wasn't he? I don't have the answer. The question is why not? Yeah. Why wasn't he not? Why did he not testify at the preliminary hearing? Why not?  Why not? And the answer was he was unavailable. Or the answer was it was a Prop 115 preliminary examination and no witnesses testified. Only the investigating officer testified. But these prosecutors, among those possibilities of handling this case, including the possibility of going to the bench and talking to the judge about it, as they claimed later they were so sure they were going to win that the judge would say it was okay that they went ahead and did it. If they were so, that's just not credible. I mean, if they were so sure that they were going to win this case, this issue, I should say, then they clearly, any experienced attorney, and they were experienced attorneys, would have gone to the bench and asked. I guess what I was getting at, if the question is why didn't he testify, the answer might be, well, he was unavailable. If the question was why was he unavailable, it's a little more direct. Yes. But you're saying the question was the why not is why didn't he testify? Yeah. And the judge had ordered the prosecutors to tell the witnesses that they had to say he was unavailable, legally unavailable or unavailable. They had considerable discussion on that issue. On the question of Taylor v. Maddox, the problem in that case was that the reviewing courts had ignored the evidence from a somewhat independent witness, the defendant's attorney, that corroborated the defendant's statements. In this case, the California Supreme Court really ignored the statements of the prosecutors. They were incriminating statements. They're highly credible about how they felt the trial was going, when they did the misconduct. That's important. The timing is very important. At that moment, they felt their case was going sour, and that was a big problem for them. It is true that these prosecutors argued against the mistrial. But what prosecutor with this level of sophistication who wanted to end the trial would fail to argue against a mistrial? They would not just sit down and say nothing, because that would be additional evidence that they wanted to end the trial. And these prosecutors thought this thing through several, several ways. I believe I've used my time. I thank the Court. Mr. Brainard, two minutes. I think it's important to distinguish here what we're really here to decide, and I don't think it's we're not really here to decide what the prosecutors actually intended. And I know a lot of discussion, and that is relevant to a certain extent, especially if we're talking about clear and convincing evidence and the presumption, et cetera, et cetera. I think that the critical thing here is that we're here, and I think this Court is charged with deciding whether the fact-finding process employed by the California Supreme Court was reasonable or not. I'm just going to set aside the whole issue of, well, what did the prosecutors intend? What was their real intent? The issue, I think, to be decided is whether the California Supreme Court employed a fact-finding process which has any validity, and under Taylor v. Maddox, Miller, L., Williams v. Taylor, the California Supreme Court did not factor into its analysis a central probative, highly probative evidence of intent that it should have and had to have done in order to- How do you know it did not? Because the opinion itself is predicated on two points. In the 30-page opinion, now, we've got a mountain of evidence in this case. There was extensive hearings. You're asking us to assume that somehow they didn't pay any attention to that. Well, they didn't factor it into their analysis. Well, you mean they didn't talk about it. That's right. That's frequently. I mean, I've written a thousand opinions where I haven't talked about things that lawyers brought up. You go to the heart of the matter, this is what we're taught, point out what makes a difference, and it's over. Well, I'd like to quote- What I'm teaching is that appellate judges should defer to the judgment of trial judges who are on the scene. They go over all the evidence, granting appropriate deference to the trial court's actual findings based on its firsthand operation. We conclude that these findings that the prosecutors did not intend to cause a mistrial are supported by substantial evidence. Well, Your Honor, I would call that abdication. Deference does not imply abandonment or abdication of judicial review. And I think from that perspective, California Supreme Court abdicated its obligation. But I'd like to quote from Taylor in response to your comment. Quote, the failure to take into account and reconcile key parts of the record casts doubt on the process by which the finding was reached and hence the correctness of the finding. That's exactly what we- Who made the finding here? Well, we have to- we are looking at the California Supreme Court decision. They say that the trial court's finding is supported by substantial evidence. They're not making the finding. The trial court made the finding that they say is supported by substantial evidence. But they had the duty of judicial review. And they did. But in doing that, they didn't reconcile key parts of the record. They looked to the trial court and they said, great, that's it. We're accepting your decision without any review, without any additional review. They reviewed and found that there was substantial evidence. Well, in- It may not be the evidence that you wish the trial court had relied upon, but it was evidence and it was a rational basis for its finding. That's what the Supreme Court said. You know, when I read the California Supreme Court decision, I cannot find where they have taken into account and reconciled key, highly probative evidence that goes right to the heart of the issue of intent. Thank you very much. The matter will stand submitted. And the next case is USA versus Curley. Emmanuel James.
judges: Thompson, Trott, Bea